Spear, J.
I concur in the foregoing except as to one point. I am of opinion that the title of neither defendant in error should be held to extend to the middle of the lake.
The decision in Gavit v. Chambers, 8 Ohio 496, is the foundation of the doctrine in Ohio that the ownership of lands bounded by an inland stream carries the title of the owner to the middle. It was held in that case to be “vitally essential to the public peace and to individual security, that there should be distinct and acknowledged legal owners for both the land and water of the country.” ... “It cannot be reasonably doubted, that, if all the beds of our rivers supposed to be navigable, and treated as such by the United States, in selling the lands, are to be regarded as unappropriated territory, a door is open for incalculable mischiefs. Intruders upon the common waste would fall into endless broils among themselves, and involve the owners of the adjacent lands in controversies innumerable. Stones, soil, gravel, the right to fish, would all be subjects for individual scramble, necessarily leading to violence and outrage.” '
The rule that the lands covered by such waters should not *356 be public waste, rests upon the ground of public policy, and it is in recognition of this rule that the lands underlying Chippewa Lake are considered to be the subject of private ownership. This being determined, the only question remaining is, what part of the lake shall be held to be the bound intended when the lake generally is given as the boundary? As to streams, the centre, or thread, is the established bound, where the language of the deed does not contradict such construction, because the centre is the most conspicuous part. The water is a moving body, and, as to the depth and breadth, is subject to constant change, which produces variations on the opposite sides. The thread, or current, however, shifts but little, and is, in the main, stationary, so that a line running to the thread would be a reasonably certain line, and would be easily ascertained. This is not true as to natural lakes and ponds. Such bodies do not have any thread or current. The water is the most conspicuous portion, but no rule of convenience or certainty requires that the line, where the lake itself is mentioned as the boundary, should be extended to the centre. Indeed, the application of such rule would be attended, in most cases, with practical difficulties in the running of lines beyond the water’s edge. If lakes were always found in the shape of a square, or a parallelogram, these difficulties would be slight, perhaps, but more frequently they are nearer a circular shape. The difficulties in such case are apparent. They may be theoretically overcome by an engineer on a diagram, but practically, in the water, they would always exist, and would prove a fruitful source of contention and quarrel.
The rule which, it is submitted, is the true rule, is stated by Gresham, J., in Indiana v. Miek et al., 11 Fed. Rep. 889, as follows:
“ Non-navigable streams are usually narrow, and the lines of riparian owners can be extended into them at right angles without interference or confusion, and without serious injustice to any one. It was therefore natural, when such streams were called for as boundaries, to hold that the real *357 line between opposite shore owners was the thread of the current. The rights of the riparian proprietors in the bed of the stream, and in the stream itself, were thus clearly defined. But- when this rule is attempted to be applied to lakes and ponds, practical difficulties are encountered. The}*have no current, and, being more or less circular, it would hardly be possible to run the boundary lines beyond the water’s edge, so as to define the rights of shore-owners in the beds. Beaver Lake is seven and a half miles east and west, and less than five miles north and south. Extending the side and end lines into the lake, there being no current, when would they meet? This rule is applicable, if at all, whether there be one or more riparian proprietors. I do not think the mere proprietorship of the surrounding lands will, in all cases, give ownership to the beds of natural non-navigable lakes and ponds, regardless of their size. It would be unfair and unjust to allow a party to claim and hold against his grantor the bed of a lake containing thousands of acres, solely on the ground that he had bought and paid for all the small surrounding fractional tracts — the mere rim.”
In my view there is no difference, in law, in the two cases now under consideration, and a like judgment should be rendered in each. But the judgment in the case of Nye is assented to as the best practical solution under the circumstances.
Williams, J., concurs in the above.
Minshall, C. J., and Dickman, J., dissent.